UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JESSALYN L. MARCUS, | : | |
| Plaintiff, | : | Civil Action No.: 09-1686 (RMU) |
| v. | : | Re Document No.: 38 |
| TIMOTHY GEITHNER, Secretary of the Treasury *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' PARTIAL MOTION TO DISMISS

**I. INTRODUCTION**

The plaintiff, a *pro se* litigant, is a former employee of the Department of the Treasury who alleges that she was the victim of racial discrimination. She seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, the D.C. Human Rights Act ("DCHRA"), D.C. CODE §§ 2.1401.01 *et seq.*, and various common law tort doctrines. The defendants move for partial dismissal, arguing that the plaintiff may only pursue certain Title VII claims. The court agrees.

Because sovereign immunity bars the plaintiff's tort claims and the plaintiff's DCHRA claim, the court dismisses those claims for lack of subject matter jurisdiction. Because the plaintiff fails to state a claim against the federal government under 42 U.S.C. § 1981, the court grants the defendants' motion to dismiss that claim as well. Because an individual plaintiff may not bring a standalone "pattern or practice" claim under Title VII, the court grants the defendants' motion on this claim. Finally, because Title VII does not allow recovery of punitive

damages against the federal government, the court grants the defendants' motion to dismiss the plaintiff's request for punitive damages.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2002, the plaintiff, an African-American female, began her employment with the United States Department of the Treasury ("Treasury") within the Bureau of Engraving and Printing ("BEP"). Am. Compl. ¶¶ 1-2. The plaintiff first held an entry-level position as a Mutilated Currency Examiner to be paid at a GS-5 level.[2] *Id.* The plaintiff's duties as a Mutilated Currency Examiner "included identifying and reconstructing damaged currency, and determining the value of the damaged money for reimbursement." *Id.*

In 2003, the BEP's Office of Currency Standards ("OCS") held a meeting attended by various high-level Treasury employees, including defendants Gregory Carper, the Chief Finance Officer, and Lorraine Robinson, a former Division Manager within the agency. *Id.* ¶ 3. At this meeting, the defendants discussed the possibility that a Mutilated Currency Specialist would relocate to the Western Currency Facility ("WCF"), located in Fort Worth, Texas. *Id.* The plaintiff volunteered to work at the WCF on a temporary basis, from March through May 2004. *Id.* ¶ 4. The plaintiff states that "[t]he salary/pay grade scale for [this assignment] was GS-5 through GS-9." *Id.* Subsequently, the plaintiff "agreed to relocate permanently" to the WCF, and she moved to Texas in August 2004. *Id.* ¶ 5. At that time, the plaintiff "was a GS-7

---

[1] For the purposes of ruling on this motion, the court assumes that the plaintiff's allegations are true. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2000) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

[2] "GS-(number)" refers to the "General Schedule," a metric by which the federal government calculates its employees' salaries. 5 U.S.C. § 5332(a)(2). The General Schedule ranges from GS-1 to GS-15. *Id.*

Mutilated Currency Examiner." *Id.* The plaintiff asserts that she accepted the transfer with the understanding that she would receive a pay grade increase by September 2004. *Id.* ¶ 4. The plaintiff claims that this pay grade increase never materialized. *Id.* ¶ 7. Rather, the plaintiff alleges that the defendants informed her that she "would have to wait until March or April 2005 to receive her GS-8, wait another year . . . for her GS-9 and [then] wait for a GS-11 position to become available" in 2007 or 2008. *Id.* ¶¶ 4, 8.

Believing that she had been misled and that "management['s] conduct was illegal," the plaintiff contacted an Equal Employment Opportunity Commission ("EEOC") representative on October 5, 2004. *Id.* ¶ 9. The plaintiff "complained . . . about what she perceived [as] race and gender discrimination in regards to the relocation to Texas." *Id.* (emphasis removed). On October 6, 2004, the plaintiff sent an email to Robinson and "informed her that she had contacted an EEOC Representative." *Id.* ¶ 12. Following this communication and the plaintiff's filing of a union grievance on November 29, 2004, the defendants allegedly subjected the plaintiff to "a barrage of adverse employment actions," which included: (1) changing the plaintiff's work schedule without prior approval; (2) false accusations that the plaintiff had made errors in her work; (3) increases in the difficulty of the plaintiff's work load; (4) inadequate training; (5) denial of the plaintiff's request for transfers due to a family emergency; (6) denial of the plaintiff's request for leave without pay; and (7) placing the plaintiff on "absent without leave" status. *Id.* ¶ 13.

The plaintiff also alleges that the defendants improperly denied her a number of opportunities for professional advancement. Specifically, the plaintiff claims that she applied for a Claims Control Technician (GS-6) position on September 8, 2005, but that the listing "was cancelled and reposted as a GS-5." *Id.*, Ex. B at 2. She further alleges that she applied for a

Mutilated Currency Specialist (GS-11) position on September 14, 2005, a listing which was later cancelled, and a Claims Control Technician (GS-5) position on October 6, 2005, which was also cancelled. *Id.*, Ex. B at 2. The plaintiff attributed the agency's hiring decisions to discrimination based on race, and she therefore "resigned under stress and duress on March 29, 2006." *Id.* ¶¶ 16-17.

In September 2009, the plaintiff filed an action in this court, advancing the following claims: (1) fraudulent and negligent misrepresentation; (2) "pattern-or-practice of hostile retaliatory work environment/harassment"; (3) retaliation; (4) disparate treatment; (5) intentional infliction of emotional distress ("IIED"); and (6) constructive discharge. *Id.* ¶ 1. The plaintiff claims the defendants violated Title VII, 42 U.S.C. § 1981, and the DCHRA. *Id.* In addition, the plaintiff seeks compensatory and punitive damages. Am. Compl. ¶ 89.

The defendants now move for partial dismissal of the plaintiff's claims. *See generally* Defs.' Mot. to Dismiss. In particular, the defendants seek dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the plaintiff's common law tort claims, the plaintiff's § 1981 claim and the plaintiff's Title VII "pattern-or-practice" claim. *Id.* In addition, the defendants also ask this court to dismiss the plaintiff's claim for punitive damages. *Id.* With the defendants' motion now ripe for adjudication, the court turns to the parties' arguments and the relevant legal standards.

## III. DISCUSSION

### A. The Court Lacks Jurisdiction to Hear the Plaintiff's Tort Claims and the Plaintiff's DCHRA Claim

#### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record,

or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### 2. Sovereign Immunity Bars the Plaintiff's Claim of Fraudulent and Negligent Misrepresentation

The complaint charges that the defendants committed "fraudulent and negligent misrepresentation." Am. Compl. ¶ 1. In particular, the plaintiff alleges that she "gave up a secure and stable job at the BEP's Office of Currency Standards (DC facility); moved 1,300+ miles across the country for a job relocation to the WCF in Fort Worth, Texas; and significantly altered her life . . . only to find that the promises on which she based this life change were false." *Id.* ¶ 36. The defendants argue that this claim is barred by the doctrine of sovereign immunity. *See* Defs.' Mot. at 8-9. The plaintiff does not directly rebut this argument, instead reaffirming her view that "[t]he bottom line is [that] the defendants intentionally provided misleading information that deprived [her] of crucial information which unfairly and inappropriately impacted the risk assessment that a rational job applicant makes when considering [whether] to accept a job offer or agree to the terms of a job relocation." Pl.'s Opp'n ¶ 46.

The general rule of sovereign immunity states that the United States cannot be sued without its consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The government may choose to waive its sovereign immunity by statute, however, and its waiver may be subject to any conditions that Congress chooses to impose. *See Int'l Eng'g Co. v. Richardson*, 512 F.2d 573, 577 (D.C. Cir. 1975). For example, the Federal Tort Claims Act ("FTCA") expressly waives the United States' immunity from suit as to certain common law torts. *See* 28 U.S.C. §§ 1346(b)(1), 2679(b). These torts include "injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of

his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA does not waive the United States' immunity for claims "arising out of . . . misrepresentation, deceit, or interference with contract rights," however. 28 U.S.C. § 2680(h). Sovereign immunity thus continues to bar claims that arise from alleged misrepresentations, whether negligent or intentional. *Block v. Neal*, 460 U.S. 289, 296 (1983) (citing *United States v. Neustadt*, 366 U.S. 696, 703-06 (1961)). A plaintiff is therefore barred from bringing a claim that centers on allegations that the defendants made a "communication of misinformation on which the recipient relies." *Id*. at 296-98; *Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 82-83 (D.D.C. 2010).

Here, the plaintiff alleges that she made her decision to transfer to the WCF based on the defendants' misrepresentations as to her pay grade level, salary and potential for advancement. Am. Compl. ¶ 36. Because the plaintiff bases her claim on her alleged reliance on these miscommunications, the court concludes that her claims are barred by sovereign immunity. *See United States v. Neustadt*, 366 U.S. at 711 (concluding that a claim brought by a purchaser of residential property who relied on inaccurate Fair Housing Act inspection and appraisals was barred by sovereign immunity); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 355 (9th Cir. 1990) (concluding that a home builder's claim arising from the government's negligently prepared contracts and cost estimate sheets was "in essence an action for negligent misrepresentation" and therefore barred). Consequently, the court lacks jurisdiction to hear the plaintiff's fraudulent and negligent misrepresentation claim and grants the defendants' motion to dismiss.

### 3. Sovereign Immunity Bars the Plaintiff's DCHRA Claim

The plaintiff's DCHRA claim does not require extended discussion. Sovereign immunity bars DCHRA claims against the federal government. *Jordan v. Evans*, 404 F. Supp. 2d 28, 31 (D.D.C. 2005) (dismissing a DCHRA claim against the federal Department of Commerce because it was barred by sovereign immunity). The D.C. Council, not Congress, enacted the DCHRA, and there is no federal statute that evinces Congress's intent to waive the United States' immunity from suit under the DCHRA. *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 139 (D.D.C. 2009); *Jordan v. Evans*, 404 F. Supp. 2d at 31. Consequently, the court dismisses the plaintiff's DCHRA claim.

### 4. The Plaintiff Does Not Oppose Dismissal of Her IIED Claim

The defendants argue that the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8102 *et seq.*, bars the plaintiff's IIED claim. Defs.' Mot. at 12. The plaintiff responds in her opposition that she "does not oppose the dismissal of the Intentional Infliction of Emotional Distress claim but she does not waive any claims to recoup compensatory damages related to the physical distress and mental anguish she suffered from the defendant's misconduct." Pl.'s Opp'n ¶ 57.

As of 1991, a plaintiff may seek compensatory damages that stem from emotional distress as a component of a successful Title VII claim. 42 U.S.C. § 1981a (allowing recovery of "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). Accordingly, the court grants the defendants' motion to dismiss the plaintiff's IIED claim. The court is careful to note, however, that the plaintiff may continue to seek damages for emotional distress as a component of her Title VII claim.

## B. The Court Grants the Defendants' Motion to Dismiss the Plaintiff's § 1981 Claim, the Plaintiff's Title VII "Pattern or Practice" Claim and the Plaintiff's Claim for Punitive Damages Under Title VII

### 1. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim . . . would entitle him to relief."). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### 2. The Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981

The defendants move to dismiss the plaintiff's § 1981 claim on the ground that the statute "is inapplicable to the federal government in employment cases." Defs.' Mot. at 5. The plaintiff responds that the "language [of] Section 1981 was expanded to include all harms flowing from race discrimination in the workplace," and thus covers her claim. *See* Pl.'s Opp'n ¶ 34.

Congress passed 42 U.S.C. § 1981 during Reconstruction in order to secure the civil rights of black citizens in the wake of the Civil War. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 426 (1968). Initially enacted with the historic purpose of protecting newly freed slaves from the depredations of the infamous Black Codes, 42 U.S.C. § 1981 was drafted to apply throughout the country, and its language entails broad protections for the victims of discrimination. *See* 392 U.S. at 426. In particular, the statute prohibits racial discrimination, whether public or private, in the making and enforcement of contracts. 42 U.S.C. § 1981(a).

Such contracts include contracts of employment. *See DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 40 (D.D.C. 2008) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976)).

The protection offered under 42 U.S.C. § 1981 is limited in its scope, however, as it applies only to "nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). The statute "does not apply to actions taken under color of *federal* law." *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 725 (7th Cir. 2000) (per curiam) (affirming the dismissal of plaintiff's § 1981 claim against individual defendants acting "in their capacity as federal employees for actions authorized by the Fair Housing Act") (emphasis added). Instead, Title VII provides the exclusive statutory remedy for an employee's racial discrimination claims against a federal government agency. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976); *see also Kizas v. Webster*, 707 F.2d 524, 541-43 (D.C. Cir. 1983) ("The Title VII remedy declared exclusive for federal employees in *Brown v. GSA* precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.").

The individual defendants to the present action are federal officials and employees of the Department of the Treasury, a federal government agency. Am. Compl. ¶¶ 1, 3. Because federal employees may not be held liable under 42 U.S.C. § 1981, *Webster*, 707 F.2d at 541-43; *Evans*, 404 F. Supp. 2d at 31, the court grants the defendants' motion to dismiss this claim.

### C. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Standalone Title VII "Pattern or Practice" Claim

The defendants argue that the court should dismiss the plaintiff's "pattern or practice" claim because that theory of recovery is only available to a member of a class action lawsuit. Defs.' Mot. at 12. The plaintiff does not respond to this portion of the defendants' argument. *See generally* Pl.'s Opp'n.

Generally, to prevail on a claim of discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

In contrast, the Supreme Court has explained that a different framework may apply in certain class actions. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 362 (1977). Under this alternate system, a class of plaintiffs may submit "proof of the pattern or practice" of discrimination that "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made pursuant to that policy." *Id.* Once the discriminatory "pattern and practice" is proven, the class members need not establish the merits of their individual discrimination claims; rather, it may be presumed that each member of the class has been the victim of the discriminatory conduct. *Id.*

Several circuits have held that the "pattern or practice" approach set forth in *Teamsters* does not apply to an individual plaintiff's non-class action suit. *E.g.*, *Celestine v. Petroleos de Venezuella S.A.*, 266 F.3d 343, 355 (5th Cir. 2001) ("The typical pattern or practice discrimination case is brought . . . as a class action to establish that unlawful discrimination has

been a regular procedure or policy followed by an employer or group of employers.") (internal quotation marks omitted); *Lowery v. Circuit City Stores*, 158 F.3d 742, 760-61 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999) ("[I]ndividuals do not have a private, non-class cause of action for pattern or practice discrimination"); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866-67 n.6 (7th Cir. 1985) (noting that pattern-or-practice "suits, by their very nature, involve claims of classwide discrimination"); *Hayes v. Chao*, 592 F. Supp. 2d 51, 56 (D.D.C. 2008) (explaining that pattern-or-practice claims under Title VII cannot be brought by an individual plaintiff); *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 127 (D.D.C. 2005) (same).

Because the plaintiff has not responded to the defendants' argument, the court may conclude that the plaintiff has conceded her claim. *Lewis v. District of Columbia*, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011); *Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18, 24 (D.D.C. 2010). Normally, this court is loath to definitively rule on a question of law before both parties have had an opportunity to present their arguments via the adversarial process. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). This is particularly true when adjudicating the claims of *pro se* plaintiffs, who are generally subject to less stringent standards in filing and maintaining their lawsuits than those plaintiffs who are represented by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, myriad rulings from members of this court and elsewhere have unanimously affirmed the proposition that an individual plaintiff may not bring a standalone "pattern or practice" claim outside the context of a class action. The court is therefore satisfied that the adversarial process could not alter the court's legal conclusion, and the court grants the defendants' motion to dismiss this claim.

As a final note, the court is careful to note that it only grants the defendants' motion to dismiss inasmuch as the plaintiff purports to pursue a "pattern or practice" claim that is distinct from the *McDonnell Douglas* framework. Although an individual plaintiff may not rest solely on the "pattern or practice" approach when proving liability, an individual plaintiff may introduce evidence of systematic or general discrimination when developing her individual discrimination claims within the *McDonnell Douglas* framework. *See Williams*, 663 F.2d at 115, n.38; *see also Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985) (noting that as a part of her prima facie case, a plaintiff could introduce statistics tending to demonstrate that the defendant's operating procedure was the standard practice); *Davis v. Califano*, 613 F.2d 957, 962 (D.C. Cir. 1979) (same). Accordingly, the plaintiff may still bring proof of a pattern or practice of discrimination, but she must operate within the context of the *McDonnell Douglas* framework.

### D. Title VII Does Not Allow the Plaintiff to Recover Punitive Damages Against the Federal Government

The defendants argue that the plaintiff may not seek punitive damages as a part of her Title VII claims. Defs.' Mot. at 14. The plaintiff does not address this argument in her opposition. *See generally* Pl.'s Opp'n.

Title VII allows a plaintiff to seek compensatory damages against the federal government, but not punitive damages. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if [she] demonstrates that the respondent engaged in a discriminatory practice . . . .") (emphasis added); *see McAlister v. Potter*, 733 F. Supp. 2d 134, 146 (D.D.C. 2010) (noting that Title VII "preclude[es] punitive damages against government agencies").

Again, the court is generally reluctant to wade into a legal dispute before the adversarial process has had an opportunity to shed light on the question at hand. *See Kerner*, 404 U.S. at 520. In the face of Title VII's unambiguous statutory language, however, this court concludes that the plaintiff may not seek punitive damages as a component of her Title VII claims. Accordingly, the court grants this portion of the defendants' motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' partial motion to dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of September, 2011.

RICARDO M. URBINA
United States District Judge